**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARTIN LEON-BRIVIESCA,<br>*Petitioner*,<br>v.<br>TODD BLANCHE, Acting Attorney General,<br>*Respondent*. | No. 17-73108<br>Agency No. A038-754-220<br>OPINION |
| SOTERO RIVERA-MENDOZA,<br>*Petitioner*,<br>v.<br>TODD BLANCHE, Acting Attorney General,<br>*Respondent*. | No. 21-70107<br>Agency No. A087-777-396 |

On Petitions for Review of Orders of the Board of Immigration Appeals

Argued and Submitted January 12, 2026
Pasadena, California

Filed June 25, 2026

Before: Consuelo M. Callahan and Patrick J. Bumatay, Circuit Judges, and Jed S. Rakoff,[*] District Judge.

Opinion by Judge Callahan;
Concurrence by Judge Bumatay

## SUMMARY[**]

### Immigration

Denying separate petitions for review filed by Martin Leon-Briviesca and Sotero Rivera-Mendoza from decisions of the Board of Immigration Appeals, the panel held that Petitioners' state convictions were categorically crimes "of child abuse, child neglect, or child abandonment" as that term is used in 8 U.S.C. § 1227(a)(2)(E)(i) ("§ 1227").

Leon-Briviesca was found removable on the ground that his conviction for "cruelty to a child" in violation of California Penal Code ("CPC") § 273a(a) fell within § 1227, and Rivera-Mendoza was found ineligible for cancellation of removal on the ground that his convictions for child

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 3 of 46



neglect under Oregon Revised Statute ("ORS") § 163.545 were covered by § 1227.

Addressing the scope of the § 1227, the panel explained that Judge Ikuta's plurality opinion in *Diaz-Rodriguez v. Garland*, 55 F.4th 697 (9th Cir. 2022) (en banc), determined that the BIA's interpretation of the phrase to include criminally negligent conduct not resulting in injury to the child was entitled to *Chevron* deference. After the Supreme Court vacated that decision and remanded for reconsideration in light of *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), this court terminated the en banc proceedings in *Diaz-Rodriguez*, held the case in abeyance, and relinquished priority over the disposition of the question.

Accordingly, this panel determined the best reading of the statute by applying the traditional tools of statutory interpretation and taking into consideration the interpretations of the BIA and this court's prior opinions.

First, the panel held that § 1227 covers situations where a minor is placed in danger but not actually harmed ("child endangerment"). In so concluding, the panel agreed with the court's sister circuits that the structure of the Immigration & Nationality Act supports this determination. The panel noted that the Fourth Circuit found that the statute's structure "clearly evinces Congress's intent that 'a crime of child abuse, child neglect, or child abandonment' should be read as a single category that encompasses the entire phrase," *Cruz v. Garland*, 101 F.4th 361, 365 (4th Cir. 2024), and that the Fifth Circuit found that the BIA's definition expressed a "unitary concept" sufficiently broad to encompass endangerment-type crimes, *Silva De Santiago v. Bondi*, 161

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 4 of 46



F.4th 250, 254 (5th Cir. 2025). The Eleventh Circuit has also indicated that § 1227 covers child endangerment.

Next, the panel held that § 1227 requires a *mens rea* of at least criminal negligence and an *actus reus* of placing a child in a situation where the child's person or health is endangered under circumstances or conditions likely to produce bodily or mental harm. As to *mens rea*, the panel noted that the Fourth, Fifth, and Eleventh Circuits had reached the same conclusion and, as to *actus reus*, the panel noted that its approach was consistent with those of the Second, Fourth, and Fifth Circuits.

Finally, the panel held that § 1227 applies to a defendant who is not the child's parent or guardian and noted that the Eleventh Circuit is of a similar mind.

Turning to Petitioners, the panel concluded that Leon-Briviesca's conviction under CPC § 273a(a) fell within § 1227. The panel rejected his argument that § 273a(a) allows for convictions based on a *mens rea* less than criminal negligence and his void-for-vagueness challenge to § 1227. As to Rivera-Mendoza, the panel concluded that his conviction under ORS § 163.545 came within § 1227. The panel rejected his argument that the Oregon statute does not require a *mens rea* of criminal negligence.

Concurring in the judgment, Judge Bumatay disagreed with the majority's inclusion of the very untraditional analytical approach of construing the statutory provision as a "unitary concept" in which the court compares the state law against the discrete elements of all three listed crimes ("child abuse," "child neglect," and "child abandonment") as a whole. Judge Bumatay wrote that the better approach is to understand that Congress wanted to place a wide range of crimes against children within § 1227(a)(2)(E)(i)'s

scope. The court should therefore treat all three categories of crimes as discrete, but define each as broadly as reasonably possible. Here, because the majority's identified elements matched the general meaning of "child neglect," Judge Bumatay concurred in the judgment.

---

## COUNSEL

Robert G. Berke (argued), Berke Law Offices Inc., Woodland Hills, California; David J. Zimmer (argued), Eric F. Citron, and Edwina B. Clarke, Zimmer Citron & Clarke LLP, Boston, Massachusetts; Lindsey Powell, Zimmer Citron & Clarke LLP, Madison, Wisconsin; Diana M. Bailey and Alex C. Hazel, Bailey Immigration PC, Beaverton, Oregon; for Petitioners.

Imran R. Zaidi (argued) and Christina P. Greer, Trial Attorneys; Melissa K. Lott, Senior Litigation Counsel; Song Park, Acting Assistant Director; Lindsay B. Glauner, Assistant Director; Office of Immigration Litigation; Joseph H. Hunt and Brett A. Shumate, Assistant Attorneys General; Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

Daniel C. Silberman, Oregon Criminal Defense Lawyers Association, Salem, Oregon, for Amicus Curiae Oregon Criminal Defense Lawyers Association.

Daniel Woofter, Russell & Woofter LLC, Washington, D.C., for Amicus Curiae American Immigration Lawyers Association.

Jonathan P. Schneller, O'Melveny & Myers LLP, Los Angeles, California, for Amici Curiae National Coalition for

Child Protection Reform and Professor David Pimentel, Scholar of Parental-Rights and Child-Welfare Law.

---

## OPINION

CALLAHAN, Circuit Judge:

Martin Leon-Briviesca (Leon-Briviesca) and Sotero Rivera-Mendoza (Rivera-Mendoza) (collectively, "Petitioners") challenge their respective denials of immigration relief by the Board of Immigration Appeals ("BIA"). The BIA determined that immigration relief was not available because Petitioners' state convictions were crimes "of child abuse, child neglect, or child abandonment" as that term is used in 8 U.S.C. § 1227(a)(2)(E)(i) ("§ 1227"). Petitioners assert three primary arguments for why their state convictions are not covered by § 1227: (1) the federal statute does not cover situations where a minor is placed in danger but not actually harmed ("child endangerment"); (2) Petitioners' state convictions did not require the levels of *mens rea* and *actus reus* required by the federal statute; and (3) the statute does not apply to a person who is neither the child's parent nor a legal guardian.

We conclude that the best reading of § 1227(a)(2)(E)(i), is that: (1) it covers child endangerment; (2) requires a *mens rea* of at least criminal negligence; (3) requires an *actus reus* of placing a child in a situation where the child's person or health is endangered under circumstances or conditions likely to produce bodily or mental harm; and (4) applies to a defendant who is not the child's parent or guardian. We

further reject Petitioners' arguments that their state convictions are not covered by § 1227.

We first determine the contours of the generic federal crime of child abuse as set forth in § 1227 and then apply it to the Petitioners' particular state convictions.

**I**

Leon-Briviesca, a native and citizen of Mexico, arrived in the United States in 1979. In 2010, Leon-Briviesca was convicted in the Superior Court of California, County of Los Angeles for "cruelty to a child" in violation of California Penal Code ("CPC") § 273a(a) and sentenced to a year in jail.[1] Based on his 2010 conviction, he was charged with being removable from the United States as an alien convicted of a crime of child abuse pursuant to § 1227. An Immigration Judge ("IJ") found that a conviction under CPC § 273a(a) is categorically a crime of child abuse for purposes of § 1227. The BIA affirmed the IJ's determination that Leon-Briviesca's conviction rendered him removable under § 1227. Leon-Briviesca filed a timely petition for review.

Rivera-Mendoza, a native and citizen of Mexico, arrived in the United States in 2000. He has two U.S. citizen children, and he lived with his children and their mother in Oregon. In 2010, Rivera-Mendoza was charged with two counts of child neglect under Oregon Revised Statute ("ORS") § 163.545. He pleaded guilty to both counts.[2]

---

[1] Leon-Briviesca's conviction was based on his assault on a 17-year-old girl who had turned to him as her minister for advice.

[2] The record does not disclose the factual basis for Rivera-Mendoza's conviction. His brief states that "the police report for the underlying incident states that Mr. Rivera-Mendoza and his wife left their sleeping two- and three-year-old children at home while they went together to

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 8 of 46



After his conviction, the Department of Homeland Security ("DHS") charged him with being an alien illegally present in the United States. He conceded removability and filed an application for cancellation of removal, asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

On November 16, 2012, an IJ pretermitted Rivera-Mendoza's application for cancellation of removal on the basis that his convictions for child neglect were crimes of "child abuse, child neglect, or child abandonment" under 8 U.S.C. § 1227(a)(2)(E)(i) and barred relief under 8 U.S.C. § 1229b(b)(1)(C). In 2015, the IJ denied Rivera-Mendoza's other claims for immigration relief but granted voluntary departure in lieu of removal. On appeal, the BIA affirmed the denial of relief.

The government requested that Rivera-Mendoza's initial appeal to the Ninth Circuit be remanded to the BIA to allow further consideration of whether his conviction was "a categorical child-abuse crime under 8 U.S.C. § 1227(a)(2)(E)(i)." We granted the motion.

On remand, the BIA issued a published opinion holding that ORS § 163.545(1) is categorically a "crime of child abuse, child neglect or child abandonment." *Matter of Rivera-Mendoza*, 28 I. & N. Dec. 184, 190 (BIA 2020). The BIA further held that Rivera-Mendoza was ineligible for cancellation of removal because he had been "convicted of a disqualifying offense" and dismissed his appeal. Rivera-Mendoza filed a timely petition for review.

---

Wal-Mart for 40-45 minutes. The two-year-old awoke and was able to get out of their apartment and onto the street, where he was found by neighbors."

## II

As noted by the Supreme Court in *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 389 (2017), non-citizens are removable pursuant to § 1227 "based on the nature of their convictions, not based on their actual conduct." "Accordingly, to determine whether an alien's underlying conviction qualifies as a [disqualifying] felony under [federal law], we 'employ a categorical approach by looking to the statute . . . of conviction, rather than to the specific facts underlying the crime.'" *Id.* (quoting *Kawashima v. Holder*, 565 U.S. 478, 483 (2012)). The categorical approach asks, "whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony." *Id.* (cleaned up). We "presume that the state conviction 'rested upon . . . the least of th[e] acts' criminalized by the statute, and then we determine whether that conduct would fall within the federal definition of the crime." *Id.* (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010)).

We employ the categorical approach to determine whether a state conviction constitutes a crime of child abuse under federal law. *Mellouli v. Lynch*, 575 U.S. 798, 805 (2015). "The state conviction triggers removal only if, by definition, the underlying crime falls within a category of removable offenses defined by federal law." *Id.* The person's "actual conduct is irrelevant to the inquiry." *Id.* (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013)).

## III

Before we can determine whether the state convictions fit within § 1227, we must define the scope of the federal statute. This has not been easy.

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 10 of 46



### A. Our evolving case law

In *Matter of Velazquez-Herrera*, 24 I. & N. Dec. 503, 508 (BIA 2004), the BIA found that the statutory term "crime of child abuse" was "left undefined." In defining the term, the BIA noted that its analysis was "influenced by the presumption that the Federal immigration laws are intended to have uniform nationwide application and to implement a unitary Federal policy" and that the statute was enacted pursuant to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") "as part of an aggressive legislative movement to expand the criminal grounds of deportability in general and to create a comprehensive statutory scheme to cover crimes against children in particular." *Id.* at 508-09 (citation modified). The BIA then surveyed various state statutes before interpreting "the term 'crime of child abuse' broadly to mean any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation." *Id.* at 512.

Following the BIA's opinion in *Matter of Velazquez-Herrera*, we issued *Fregozo v. Holder*, 576 F.3d 1030 (9th Cir. 2009). We deferred to *Matter of Velazquez-Herrera* but determined that the BIA had defined "child abuse" as "requiring some actual injury to a child" and not reaching "conduct that merely *could* place a child's health and safety at risk." *Id.* at 1038 (emphasis in original).

The BIA responded in *Matter of Soram*, 25 I. & N. Dec. 378 (2010). It recognized that *Matter of Velazquez-Herrera* had not addressed whether "a child must actually be injured for a crime to constitute child abuse," and that the Ninth

Circuit in *Fregozo* had interpreted *Matter of Velazquez-Herrera* as requiring actual injury. *Id*. at 380-81. But the BIA disagreed. It found "no convincing reason to limit offenses under section 237(a)(2)(E) of the Act to those requiring proof of actual harm or injury to the child." *Id*. at 381. The BIA held that "the term 'crime of child abuse,' as described in *Velazquez-Herrera*, is not limited to offenses requiring proof of injury to the child." *Id*. The BIA conducted a review of state statutes and noted that § 1227 had been enacted to significantly expand the grounds for deporting those "who have been convicted of maltreating or preying upon children." *Id*. at 384.

In *Martinez-Cedillo v. Sessions*, 896 F.3d 979 (9th Cir. 2018), we commented that *Matter of Soram* "responded to our court's misinterpretation of the BIA's prior decision." *Id*. at 987.[3] We noted that the BIA's "correction of our misinterpretation [in *Fregozo*] was not a change in position," and clarified that *Matter of Velazquez-Herrera* was "not limited to offenses requiring proof of injury to the child." *Id*. at 986-87. Applying the two-step framework set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), we determined that the statute was "broad and susceptible to multiple interpretations" and that the BIA's interpretation of the statute as including child endangerment was reasonable. *Martinez-Cedillo*, 896 F.3d at 987-88.

However, the divided three-judge panel in *Diaz-Rodriguez v. Garland,* 12 F.4th 1126 (9th Cir. 2021),

[3] *Martinez-Cedillo* was ordered reheard en banc, *Martinez-Cedillo v. Barr,* 918 F.3d 601 (9th Cir. 2019), but the petition was subsequently vacated as moot. *Martinez-Cedillo v. Barr*, 923 F.3d 1162 (9th Cir. 2019).

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 12 of 46



disagreed, finding that *Martinez-Cedillo* was not binding and concluding that the text of § 1227(a)(2)(E)(i) "unambiguously forecloses the BIA's interpretation of 'a crime of child abuse, child neglect, or child abandonment' as encompassing negligent child endangerment offenses." *Id*. at 1135.

*Diaz-Rodriguez* was vacated and ordered reheard en banc. *Diaz-Rodriguez v. Garland*, 29 F.4th 1018 (9th Cir. 2022). Judge Ikuta's plurality en banc opinion for four judges determined that the phrase "crime of child abuse, child neglect or child abandonment" was ambiguous and that the BIA's interpretation of the phrase to include criminally negligent conduct not resulting in injury to the child was entitled to *Chevron* deference. *Diaz-Rodriguez v. Garland*, 55 F.4th 697, 727, 735 (9th Cir. 2022) (en banc). Judge Ikuta's plurality opinion was supported by a concurrence by Judge Collins (joined by Judge Bumatay) finding that the statute was not ambiguous and covered criminally negligent conduct not resulting in actual injury. *Id.* at 743, 746. Judge Wardlaw, dissenting for five judges, asserted that "the statute unambiguously excludes child endangerment." *Id*. at 747.

The Supreme Court vacated our en banc decision in *Diaz-Rodriguez* and remanded the case to us to reconsider in light of *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). *Diaz-Rodriguez v. Garland*, 144 S. Ct. 2705 (2024).

### B. *Loper Bright*

*Loper Bright* rejected *Chevron* deference and directed that "[c]ourts must exercise their independent judgment in

deciding whether an agency has acted within its statutory authority." *Loper Bright*, 603 U.S. at 412. It explained:

> [D]elegating ultimate interpretive authority to agencies is simply not necessary to ensure that the resolution of statutory ambiguities is well informed by subject matter expertise. The better presumption is therefore that Congress expects courts to do their ordinary job of interpreting statutes, with due respect for the views of the Executive Branch.

*Id.* at 402-03.

Thus, under the Administrative Procedure Act ("APA"), it "remains the responsibility of the court to decide whether the law means what the agency says." *Id*. at 392 (citation modified). The interpretation of ambiguous statutory provisions is not "policymaking." *Id*. Rather, "resolution of statutory ambiguities involves legal interpretation," and "[c]ourts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences." *Id*. at 403. "The statute still has a best meaning, necessarily discernible by a court deploying its full interpretive toolkit." *Id*. at 408-09.

The Supreme Court, however, recognized that the APA:

> [I]ncorporates the traditional understanding of the judicial function, under which courts must exercise independent judgment in determining the meaning of statutory provisions. In exercising such judgment, though, courts may—as they have from the start—seek aid from the interpretations of

> those responsible for implementing particular statutes. Such interpretations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance" consistent with the APA. *Skidmore* [*v. Swift & Co.*], 323 U.S. [134], 140 [1944]. And interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning.

*Id*. at 394. Even when "the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Id.* at 395. In such a situation, the court "fulfills that role by recognizing constitutional delegations, fixing the boundaries of the delegated authority, and ensuring the agency has engaged in reasoned decision making within those boundaries." *Id*. (citation modified).

Finally, while affirmatively laying *Chevron* deference to rest, the Court noted that it was not calling "into question prior cases that relied on the *Chevron* framework." *Id.* at 412. Such cases "are still subject to statutory *stare decisis* despite our change in interpretative methodology." *Id.*

## IV

When *Diaz-Rodriguez* was remanded to us to reconsider in light of *Loper Bright*, we terminated the en banc proceedings in *Diaz-Rodriguez*, held the case in abeyance, and relinquished "priority over the disposition of the

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 15 of 46



question whether a conviction for child endangerment under California Penal Code § 273a(a) is 'a crime of child abuse, child neglect, or child abandonment' under 8 U.S.C. § 1227(a)(2)(E)(i) in light of *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)." *Diaz-Rodriguez v. Bondi*, 136 F.4th 984 (9th Cir. 2025) (citation modified). We are now tasked with determining the "best reading of the statute" taking into consideration the interpretations of the BIA, as the agency responsible for implementing the statutes, and our prior opinions, to the extent that they remain sound.

### A. The best reading of § 1227 is that it includes child endangerment

8 U.S.C. § 1227(a)(2)(E)(i) states in relevant part: "Any alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable." We first focus on what crimes are encompassed in the phrase "child abuse, child neglect, or child abandonment." To do so, we use the "normal tools of statutory interpretation." *Esquivel-Quintana*, 581 U.S. at 391. Applying these tools, we conclude that the best reading of the statute is that it encompasses child endangerment.

We begin with the "language of the statute." *Id*. (citation modified). On the one hand, child endangerment—practically defined as placing a child in a dangerous situation which does not actually result in physical harm—conceptually fits within the definitions of "child abuse, child neglect, and child abandonment." On the other hand, child endangerment may be considered a separate offense from "child abuse, child neglect, or child abandonment."

Sometimes Congress provides a definition of the offense in the statute itself or "establishes the elements of a generic

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 16 of 46



offense by cross-referencing another federal statute." *Diaz-Rodriguez*, 55 F.4th at 712. But where, as here, Congress takes neither approach, we apply other tools of statutory construction, usually starting with the ""everyday understanding of' the terms used." *Esquivel-Quintana*, 581 U.S. at 391.

The three opinions in *Diaz-Rodriguez*, 55 F.4th 697, reflect the lack of certainty that may be gleaned from dictionary definitions. Judge Ikuta, writing for the plurality, concluded that the statute's terms were ambiguous and "the dictionaries do not point in one direction with respect to the terms 'child abuse' and 'child neglect.'" *Id.* at 715, 723. In his concurrence, Judge Collins opined that the traditional tools of statutory construction "suffice to confirm" that the federal statute "categorically embraces the . . . 'least' offense covered by § 273a(a)."[4] *Id.* at 740. Judge Wardlaw's dissent, however, opined that the "ordinary meaning of those terms excludes negligent child endangerment." *Id.* at 755. These diverse views do not compel a "best reading" of § 1227(a)(2)E)1).[5]

We also may look to state criminal codes for additional evidence about the generic meaning of a federal criminal

---

[4] In *Diaz-Rodriguez*, the plurality indicated that child endangerment could be included within the term "child abuse" and possibly "child neglect." 55 F.4th at 714. The concurrence found that child endangerment was encompassed by "child neglect." *Id.* at 741. In determining that § 1227 covers child endangerment, we need not determine whether it is covered by "child neglect," "child abuse," or both.

[5] *See Sandoval Argueta v. Bondi*, 137 F.4th 265, 273 (5th Cir. 2025), observing that the phrase "child abuse, child neglect, or child abandonment" in § 1227(a)(2)(E)(i) "has uniformly been found ambiguous."

statute, *see Esquivel-Quintana*, 581 U.S. at 395; however, in this case, surveying state statutes discloses no prevailing view of what constitutes child abuse, child neglect, or child abandonment. *See Diaz-Rodriguez*, 55 F.4th at 720. The plurality's survey showed that 15 states, "home to more than 45 percent of the United States population . . . [criminalized] child endangerment." *Id*. at 723. The dissent countered that at the time of IIRIRA's enactment, 36 states, including the District of Columbia, did not criminalize negligent child endangerment and concluded that therefore, child endangerment was not included in § 1227(a)(2)(E)(i). *Id*. at 766. In light of the differing perspective on state criminal codes, we agree with the plurality that:

> Because there was no discrete, well-understood offense of "child endangerment," just as there were no discrete offenses of "child abuse, child neglect, or child abandonment," in 1996, it is not possible to infer that Congress's failure to use the phrase "child endangerment" meant that Congress did not intend its overlapping definitions to cover crimes involving the elements of the least offense criminalized by section 273a(a).

*Id*. at 727.

When Congress has not provided a clear definition, we must still determine the "best meaning" of the statute, *see Loper Bright*, 603 U.S. at 400, and discerning Congress's intent remains relevant, *see Esquivel-Quintana*, 581 U.S. at 391 (noting that "Congress added sexual abuse of a minor to the INA in 1996, as part of a comprehensive immigration reform Act"). The BIA stated in *Matter of Velazquez-*

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 18 of 46



*Herrera*, 24 I. & N. Dec. 503, that § 1227 was enacted "as part of an aggressive legislative movement to expand the criminal grounds of deportability in general and to create a 'comprehensive statutory scheme to cover crimes against children' in particular." *Id.* at 508-09. The BIA also noted "the presumption that the Federal immigration laws are intended to have uniform nationwide application and to implement a unitary Federal policy," and held that "absent clear congressional guidance to the contrary, the meaning of the term 'crime of child abuse' will be determined by reference to a 'flexible, uniform standard that reflects the federal policies underlying [§ 1227]' . . . and not by reference to legal classifications that vary from State to State." *Id.* at 508. This view merits some consideration. *See Loper-Bright*, 603 U.S. at 394.

We also look to other tools such as the structure of the legislation, the surrounding provisions of the terms, and "relevant contemporaneous federal statutes that use the same language or relate to the same type of offenses." *Diaz-Rodriguez*, 55 F.4th at 712; *see also Esquivel-Quintana*, 581 U.S. at 393. The application of these tools also supports our determination that § 1227 covers child endangerment. Where several items in a list share an attribute, this "counsels in favor of interpreting the other items as possessing that attribute as well." *Beecham v. United States*, 511 U.S. 368, 371 (1994). Applying this interpretive method to § 1227, the plurality opinion in *Diaz-Rodriguez* noted that "the term 'child abandonment'. . . does not necessarily involve an injury to the child, which undercuts the argument that 'child abuse' and 'child neglect' necessarily requires an injury." *Diaz-Rodriguez*, 55 F.4th at 716. It further stated: "[m]oreover, the inclusion of 'stalking' and 'violation of protection order'—crimes that do not necessarily include

violence or injury—in § 1227(a)(2)(E)(i) indicates that Congress did not mean that a crime of child abuse or child neglect would encompass only egregious felonies requiring injury to the victim." *Id.*

Reading the statute as covering child endangerment is also supported by relevant contemporaneous federal statutes. As noted in the plurality opinion in *Diaz-Rodriguez*, the National Child Protection Act of 1993, which was enacted "to establish procedures for national criminal background checks for child care providers," defines "child abuse crime" as "a crime committed under any law of a State that involves the physical or mental injury, sexual abuse or exploitation, negligent treatment, or maltreatment of a child by any person." 55 F.4th at 717 (quoting 42 U.S.C. § 5119c(3)). We agree with the plurality opinion's comment that "just three years before Congress amended the INA to include a 'crime of child abuse' as a removable offense, Congress understood such a crime to include the 'negligent treatment' of a child 'by any person.'" Id. at 717–18.[6]

The Supreme Court also advises that we look at the structure of the INA and surrounding provisions to aid our interpretation of the statute. *See Esquivel-Quintana*, 581 U.S. at 393-94. We agree with our sister circuits that the structure of the INA supports our determination that § 1227 covers child endangerment. For example, the Fourth Circuit in *Cruz v. Garland*, 101 F.4th 361 (4th Cir. 2024), found that

---

[6] The plurality opinion in *Diaz-Rodriguez* cites a number of other federal civil code sections, such as 18 U.S.C. § 3509(a)(3) (1996), 42 U.S.C. § 13031(c)(1) (1996), 42 U.S.C. § 3769aa-8(2) (1996), and 42 U.S.C. § 5106g(4) (1996), as providing some evidence that § 1227(a)(2)(E)(i) "was commonly understood as encompassing neglectful conduct." *Id.* at 718–19.

the statute's structure "clearly evinces Congress's intent that 'a crime of child abuse, child neglect, or child abandonment' should be read as a single category that encompasses the entire phrase." *Id.* at 365. It further determined that the common thread between child abuse, child neglect, and child abandonment was "a high risk of harm to a child, either by injuring the child directly or by putting the child in a situation likely to lead to injury" and accordingly, "it is not necessary for a child to have been actually harmed." *Id.* The Fifth Circuit agreed with the Fourth Circuit that § 1227 is broad enough to cover instances where children are not actually harmed. *Sandoval Argueta v. Bondi*, 137 F.4th 265, 274 (5th Cir. 2025); *see also Silva De Santiago v. Bondi*, 161 F.4th 250, 254 (5th Cir. 2025) (finding that the BIA's definition "expresses a 'unitary concept' and is sufficiently broad to encompass endangerment-type crimes."). The Eleventh Circuit has also indicated that § 1227 covers child endangerment. *Bastias v. U.S. Attorney General*, 158 F.4th 1188 (11th Cir. 2025).[7]

We also note that the dissent in *Diaz-Rodriguez* was concerned with the harshness of including child endangerment within § 1227(a)(2)(E)(i) because a

[7] Each of the three judges on the Eleventh Circuit panel issued a separate opinion. Judge Newsom held that the Eleventh Circuit was bound by its pre-*Loper Bright* opinion. Judge Marcus concluded "the generic federal crime of child neglect requires a *mens rea* of recklessness and conduct creating a risk of harm to a child, which matches the *mens rea* and conduct needed for the 'least culpable conduct' criminalized under Bastias's Florida statute of conviction." 158 F.4th at 1218. Judge Middlebrooks concluded that "[h]aving established that the generic federal offense of child abuse is not confined to injurious conduct, embraces culpably negligent acts, and may extend to those who are not parents nor guardians of the victim, it is a fairly straightforward matter to conclude Florida Statute § 827.03(2) is a categorical fit." *Id.* at 1227.

conviction under the statute "renders a noncitizen . . . statutorily ineligible for this discretionary relief" under 8 U.S.C. § 1229b(b)(1)(D).[8] 55 F.4th at 762. However, as noted, § 1227 was enacted "as part of an aggressive legislative movement to expand the criminal grounds of deportability in general and to create a 'comprehensive statutory scheme to cover crimes against children' in particular." *Matter of Velazquez-Herrera*, 24 I. & N. Dec. at 508-09 (citation modified). This weighs against holding that persons convicted of certain offenses encompassed by § 1227 are eligible for relief under § 1229b(b)(1)(D), while persons convicted of other covered offenses are not. Moreover, Congress knew how to create a waiver from the consequences of a conviction covered by § 1227. Section 1227(a)(1)(E)(ii) provides an exception for when a person helps a family member illegally enter the United States, while § 1227(a)(1)(H) provides a waiver for certain misrepresentations of a person who "is the spouse, parent, son, or daughter of a citizen of the United States or of an alien lawfully admitted to the United States for permanent residence." But there is no waiver provision for aliens convicted of an offense covered by § 1227(a)(2)(E)(i).

We conclude, having applied the traditional tools of statutory construction, including consideration of the BIA's position, that the best meaning of § 1227(a)(2)(E)(i) is that it encompasses child endangerment.

---

[8] The statute provides that the Attorney General may cancel removal if an alien "establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 22 of 46



### B. Section 1227 requires a *mens rea* of at least criminal negligence and an *actus reus* of placing a child in a situation likely to produce bodily or mental harm

Having determined that § 1227 encompasses child endangerment, we turn to determining what *mens rea* and *actus reus* are required by the statute.

#### 1. Mens rea

Section 1227(a)(2)(E)(i) provides that an alien convicted of a crime of "child abuse, child neglect, or child abandonment is deportable." But the statute does not address what level of *mens rea* is required. *See Diaz-Rodriguez*, 55 F.4th at 741 (Collins, J. concurring in part and concurring in the judgment). Accordingly, we apply the "normal tools of statutory interpretation" to determine the level of *mens rea* required for a state conviction to be covered by § 1227. *See Esquivel-Quintana v. Sessions*, 581 U.S. at 391. We conclude that a state conviction comes within § 1227(a)(2)(E)(i) when there is a requirement of a *mens rea* of at least criminal negligence.

We start with the ordinary meaning of the statutory language. *See, e.g., Niz-Chavez v. Garland*, 593 U.S. 155, 163 (2021). As noted by Judge Collins in his concurrence in *Diaz-Rodriguez*, "[t]he operative term, after all, is 'neglect,' and the relevant offense is the '*crime* of . . . child *neglect*.'" *Diaz-Rodriguez*, 55 F.4th at 741 (emphasis in original). We agree with him that "the very concept of criminal neglect clearly indicates that criminal negligence is sufficient." *Id.* Similarly, Eleventh Circuit Judge Marcus in his concurring opinion in *Bastias*, 158 F.4th at 1214, consulted the dictionaries and concluded that "[i]n essence,

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 23 of 46



child neglect suggests the failure to fulfill a duty imposed by law that creates a risk of harm to a child."[9]

We next consider the BIA's interpretation as the agency responsible for implementing the INA. *See Loper Bright*, 603 U.S. at 394 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

In *Matter of Velazquez-Herrera*, the BIA interpreted § 1227 "broadly to mean any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being." 24 I. & N. Dec. at 509, 511 (citation modified). In *Matter of Soram*, the BIA reiterated that the "knowingly or recklessly" *mens rea* required by a Colorado statute was "consistent with [its] definition of a crime of child abuse, which requires an 'intentional, knowing, reckless, or criminally negligent act or omission.'" 25 I. & N. Dec. at 383 (citation modified).

---

[9] Judge Marcus continued:

> *See* Merriam Webster's Dictionary of Law 324 (1996) ("a disregard of duty resulting from carelessness, indifference, or willfulness; *esp*: a failure to provide a child under one's care with proper food, clothing, shelter, supervision, medical care, or emotional stability."). Child abuse suggests a broader nature of offending conduct including a variety of sins against a child, *see Child Abuse*, Black's Law Dictionary (6th ed. 1990) ("Any form of cruelty to a child's physical, moral or mental well-being."); while child abandonment, in turn, suggests a different kind of crime, that is, one leaving a child without an intent to return, *see Abandonment*, Black's Law Dictionary (6th ed. 1990) ("Desertion or willful forsaking.").

*Id*.

We accepted this definition in *Fregozo*, commenting that the BIA "interpreted 'crime of child abuse' to mean 'any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation.'" 576 F.3d at 1036 (quoting *Velazquez-Herrera*, 24 I. & N. Dec. at 512)). In *Martinez-Cedillo*, 896 F.3d at 992, we held that the "the BIA's interpretation of a crime of child abuse, neglect, or abandonment in *Velazquez*[*-Herrera*] and *Soram* is a reasonable construction of ambiguous statutory language."

In *Diaz-Rodriguez*, the plurality opinion deferred "to the BIA's interpretation of the unitary phrase 'crime of child abuse, child neglect, or child abandonment' to mean any offense involving an intentional, knowing, reckless, or criminally negligent act or omission (including acts or circumstances that create a substantial risk of harm to a child's health or welfare) that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation." 55 F.4th at 735. Judge Collins in his concurrence agreed, stating that "the very concept of criminal neglect clearly indicates that criminal negligence is sufficient." *Id.* at 741. Even the dissent in *Diaz-Rodriguez* seemed to accept that § 1227 requires a *mens rea* of criminal negligence.[10]

---

[10] The dissent recognized that the state statute in issue, California Penal Code § 273a(a), required a *mens rea* of criminal negligence. *Id.* at 751. The dissent, however, objected that there were numerous examples "of actors in the criminal justice system finding that poor parenting decisions satisfy the criminal negligence *mens rea* required for arrests, prosecutions, or convictions under section 273a(a)." *Id.* at 753.

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 25 of 46



As the en banc decision in *Diaz-Rodriguez* was vacated, we consider anew the *mens rea* required by § 1227. We find the en banc perspective in *Diaz-Rodriguez* to be persuasive. Moreover, neither petitioner has advanced any persuasive reason for us to change course.[11] Accordingly, we continue to read § 1227 as requiring a *mens rea* of at least criminal negligence.

We note that three of our sister circuits have reached the same conclusion. In *Cruz*, 101 F.4th at 369, the Fourth Circuit reaffirmed that § 1227 required a "culpable mental state," which appears to equate to criminal negligence.[12] Post *Loper Bright*, the Fifth Circuit in *Sandoval Argueta*, held, without invoking *Chevron* deference, that § 1227 covers any "offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation." 137 F.4th at 273 (citation modified); *see also Silva de Santiago v. Bondi*, 161 F.4th 250, 253 (5th Cir. 2025). In *Bastias*, Judge Marcus in his concurrence stated that "the generic federal crime of child neglect requires a *mens rea* of recklessness and conduct creating a risk of harm to a child." 158 F.4th at 1218. Judge Middlebrooks, in his concurrence, agreed with his colleagues that Florida's

---

[11] In his brief, Leon-Briviesca accepted that § 1227 requires at least a *mens rea* of criminal negligence.

[12] In holding that the *mens rea* of a culpable mental state applies to the act and not to the child's age, the Fourth Circuit cited *Garcia v. Barr*, 969 F.3d 129 (5th Cir. 2020), which endorsed "the Board's requirement of an act done with at least criminal negligence." 101 F.4th at 135.

requirement of "culpable negligence" satisfied "the generic federal definition of child abuse." *Id.* at 1224. He explained:

> [C]ulpably negligent conduct is conduct so egregious and grossly flagrant as to evince a reckless disregard for human life, revealing such a want of care as to raise a presumption of conscious indifference to the consequences. Whether this dereliction of care is predicated on what the defendant should have known or in fact did know, it stands to reason that conduct of such a reckless and egregious nature can readily be classified as "abuse," "neglect," or "abandonment" as Congress understood those terms in 1996.

*Id.*

In sum, we hold that a state conviction comes within § 1227 if it requires a *mens rea* of at least criminal negligence.

2. <u>Actus reus</u>

We take a similar approach in affirming that § 1227 has an *actus reus* of placing a child in a situation likely to produce bodily or mental harm.

In *Matter of Velazquez-Herrera*, 24 I. & N. Dec. at 512, the BIA defined child abuse "broadly to mean any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation."

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 27 of 46



In *Matter of Soram*, the BIA considered a conviction under Colorado Revised Statute § 18-6-401(1)(a), which punishes "a person who permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health." 25 I. & N. Dec. at 379. One issue was whether replacing "may endanger" and "endanger" with "poses a threat of injury" changed the degree of danger necessary for a conviction. *Id.* at 385. The BIA cited approvingly a statement by a Colorado Supreme Court justice that these changes predicated "criminal liability on the child being 'unreasonably' placed in a situation that poses a threat. Permitting a child to be placed in a situation posing a threat involving less than a 'reasonable probability' of injury is clearly not unreasonable, and therefore no longer punishable as child abuse under the current statute." *Id.* (citation modified). In other words, the BIA indicated that § 1227 applies only to an act that unreasonably endangers a child. Accordingly, the BIA dismissed Soram's appeal. *Id.* at 386.

In *Matter of Mendoza Osorio*, the BIA considered a conviction under a New York statute for "taking action that is likely to be harmful to a child's welfare." 26 I. & N. Dec. 703, 705 (2016). It held that the statute's elements—"a knowing mental state coupled with an act or acts creating a likelihood of harm to a child—fit within [the] definition of a 'crime of child abuse, child neglect, or child abandonment' in section 237(a)(2)(E)(i) of the Act." *Id.* at 706. The BIA concluded that the New York statute required "a sufficiently

high risk to a child to meet the definition of child abuse, neglect, or abandonment under the Act."[13] *Id.* at 711.

---

[13] The BIA's distinguishing of two cases reflects a practical approach. It explained:

> The case involved two defendants, Hitchcock and Duenas, both of whom were charged with endangering the welfare of a child following accidents in which one child used the defendant's gun to shoot another child. Hitchcock had 23 firearms in his home, including semiautomatic weapons and an assault rifle, most of which were openly accessible. At least one weapon was loaded, and ammunition for the others was nearby. Hitchcock testified that he had shown a 14-year-old living in his home how to load and shoot the guns and that he suspected they had been tampered with in his absence. The court took these facts into consideration in concluding that the evidence was legally sufficient to convict Hitchcock because it was reasonable for the jury to infer that he knowingly kept guns in a manner likely to be injurious to children living in or near his home.
>
> In contrast, Duenas had only one gun in his home and had made a significant effort to conceal it. There was no evidence that anyone else in the household knew about the gun, and Duenas was unaware that his younger brother had secretly seen him cleaning it in his bedroom. In these circumstances, the court found that the evidence was legally insufficient to conclude that Duenas was aware that his conduct would likely be injurious to a child. Thus, although both defendants possessed handguns that resulted in harm to a child, Duenas' conduct did not meet the legal requirements for conviction under section 260.10(1). This case demonstrates that there are, in fact, significant limits

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 29 of 46



In *Alvarez-Cerriteno*, 899 F.3d 774, we directly considered the degree of threat of harm required by § 1227. We first cited, and in essence adopted, the BIA's positions as set forth in *Matter of Soram* as requiring at least a "reasonable probability" of harm to the child and in *Matter of Mendoza Osorio* as "creating a likelihood of harm to the child." *Id*. at 780-81. Reviewing the Nevada statute at issue *de novo*, we concluded that the Supreme Court of Nevada would likely adopt California's "reasonable foreseeability standard." *Id.* at 782. Because this was less than the reasonable probability or likelihood of harm required by § 1227, we granted the petition. *Id.* at 784.

Following *Alverez-Cerriteno*, the plurality affirmed the BIA's conclusion that § 1227 requires an *actus reus* of "an intentional knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or impairs a child's physical or mental well-being, including sexual abuse or exploitation." *Diaz-Rodriguez*, 55 F.4th at 731. "An 'act or omission that constitutes maltreatment of a child' includes acts or circumstances that create a substantial risk of harm to a child's health or welfare." *Id*. (citing *Matter of Soram*, 25 I. & N. Dec. at 380-82). Judge Collins in his concurrence, similarly concluded that a crime of child neglect requires that the person breach his duty toward a child "in a manner that constitutes a gross deviation from accepted standards," and "the person should have been aware that his or her conduct presented a substantial and

---

> to the sweep of the statute, contrary to the respondent's assertion.

*Id.* at 708-09.

unjustifiable risk of serious physical or emotional harm to the child." *Id*. at 742. We largely agree.

The mistreatment of a child may be physical, mental or emotional and need not be "great" or "serious." Contemporary dictionaries define "child abuse" as "maltreatment of a child, esp. by beating, sexual interference, or neglect" (Oxford English Dictionary at 114 (2d ed. 1989)), as "any form of cruelty to a child's moral or mental well-being (Black's Law Dictionary at 239 (6th ed. 1990)), and as "an intentional or neglectful physical or emotional injury imposed on a child, including sexual molestation" (Black's Law Dictionary at 10 (7th ed. 1999)). Contemporary federal statutes are in accord. The National Child Protection Act of 1993 defined "child abuse crime" as "a crime committed under any law of a State that involves the physical or mental injury, sexual abuse or exploitation, negligent treatment, or maltreatment of a child by any person." Pub. Law 103-209, 107 Stat. 2490 (Dec. 20, 1993). 18 U.S.C. § 3509(a)(3) (1996) and 42 U.S.C. § 13031(c)(1) (1996) defined "child abuse" as including "the physical or mental injury . . . of a child." And the Child Abuse Prevention and Treatment Act. 42 U.S.C. § 5106g(4) (1996), defined "child abuse and neglect" as the "physical or mental injury, sexual abuse or exploitation, negligent treatment, or maltreatment of a child. . . ."

Our sister circuits have accepted this "likely to produce bodily or mental harm" standard with the understanding that it should be applied on a case-by-case basis. In *Matthews v. Barr*, the Second Circuit affirmed the BIA's holding that a New York statute "was categorically a crime of child abuse, neglect, or abandonment because a conviction required a knowing mental state coupled with an act or acts creating a likelihood of harm to a child." 927 F.3d 606, 614 (2nd Cir.

2019) (citation modified). In rejecting Matthews' arguments on appeal, the Second Circuit held that "*Moncrieffe* [*v. Holder*, 569 U.S. 184 (2013)] and [*Gonzales v.*] *Duenas-Alvarez* [549 U.S. 183 (2007)] suggest that it is a noncitizen's burden to establish a realistic probability of being convicted for conduct outside the federal definition, at least in cases where the state and federal statutes appear to be a categorical match." *Matthews*, 927 F.3d at 618. Moreover, "[w]here a statute is not facially overbroad, the realistic probability approach requires a noncitizen to demonstrate 'that the State actually prosecutes the relevant offense in cases' that fall outside the federal definition." *Id.* at 620 (quoting *Moncrieffe*, 569 U.S. at 206).

In *Cruz*, 101 F.4th 361, the Fourth Circuit observed that "[t]he common thread between these three terms is that they create a high risk of harm to a child, either by injuring the child directly or by putting the child in a situation likely to lead to injury." *Id*. at 365. The Fourth Circuit held that "a crime of child abuse requires an act or omission that either injures a child or creates a sufficiently high risk that a child will be harmed" and cited cases from five of its sister circuits.[14] *Id.* at 365-66. Also, in *Sandoval Argueta*, the

[14] The Fourth Circuit cited the following:

> *Florez v. Holder*, 779 F.3d 207, 212 (2d Cir. 2015) (deferring to the BIA's crime of child abuse definition); *Mondragon-Gonzalez v. Att'y Gen.*, 884 F.3d 155, 159 (3d Cir. 2018) (same); *Garcia v. Barr*, 969 F.3d 129, 134 (5th Cir. 2020) (same); *Diaz-Rodriguez*, 55 F.4th at 732; *Bastias v. U.S. Att'y Gen.*, 42 F.4th 1266, 1273–75 (11th Cir. 2022) (same); *see also Zarate-Alvarez v. Garland*, 994 F.3d 1158, 1164–65 (10th Cir. 2021) (deferring in relevant part).

*Id*. at 366.

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 32 of 46



Fifth Circuit agreed with the Fourth Circuit that "there is no direct injury requirement for a particular offense to be a 'crime of child abuse'; rather, the minimum requirement is that the offense created a sufficiently high risk that a child will be harmed." 137 F.4th at 273 (citation modified).[15]

We find that the definitions proffered by the plurality and the concurring opinions in *Diaz-Rodriguez* to be persuasive as well as consistent with the approaches taken by the BIA and our sister circuits. We affirm that for child endangerment to be covered by § 1227 there must be an *actus reus* of placing a child in a situation presenting a substantial risk of harm to a child's physical or mental health. *See Diaz-Rodriguez*, 55 F.4th at 713. This requires a showing that the person acted "in a manner that constitutes a gross deviation from accepted standards." *Id.* at 742 (Collins, J., concurring in part and concurring in the judgment).

### C. Section 1227 is not limited to parents and legal guardians

Rivera-Mendoza also asserts that § 1227's coverage should be limited to parents or legal guardians. We find no good reason to read § 1227 as excluding a crime of child abuse committed by an individual who is not the child's

[15] The Fifth Circuit went further and stated:

> The simple fact that an alien *believes* that his victim is younger than seventeen renders his request for sexual favors a "crime of child abuse" for removal purposes because the alien's soliciting sexual favors after forming that belief "creates a sufficiently high risk that a child will be harmed."

*Id*. at 274 (quoting *Cruz*, 101 F.4th at 366).

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 33 of 46



parent or guardian. The statute itself applies to "any alien." Moreover, restricting the provision's scope is contrary to the statute's purpose. As noted, Congress intended the term "crime of child abuse" to be construed broadly, and the BIA determined that § 1227 was not limited "to those offenses that were necessarily committed by the child's parent or by someone acting in loco parentis." *Matter of Velasquez-Herrera*, 24 I. & N. Dec. at 513. In *Matter of Soram*, the BIA indicated that § 1227 had a similar purpose as the Colorado statute there in issue which had been enacted "to protect children, who frequently are unable to care for themselves, from the risk of injury or death associated with conduct that places a child in a situation that poses a threat to the child's well-being." 25 I. & N. Dec. at 384 (citation modified).

The Eleventh Circuit is of a similar mind. Judge Marcus in his concurring opinion in *Bastias*, noted that the dictionary definitions of child neglect "include within their scope all people who have a duty to take care of children, not just parents or guardians." 158 F.4th at 1216. Judge Middlebrooks concurred, noting that the INA has no such restriction, that "one may abuse or neglect a child without being the child's parent," and that "[i]t is sufficient, instead, for one to have assumed a supervisory role, such that the child is within their care—thereby assuming the duty to care for that child throughout the duration of their supervision." *Id*. at 1226.

Because limiting § 1227 to parents and guardians would be contrary to Congress's intent when it enacted the statute, the best reading of the statute is that it applies to a person who is not the child's parent or guardian.

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 34 of 46



## V

Having determined the scope of the federal statute, § 1227, we apply it to the petitioners' state convictions.

### A. Leon-Briviesca's conviction under California Penal Code § 273a(a)

Leon-Briviesca advances two challenges to his conviction under CPC § 273a(a). First, he asserts that CPC § 273a(a) is not a crime of child abuse under § 1227 because subsection [2] requires only a showing of general intent.[16] Second, he claims that § 1227 is void-for-vagueness. We do not find either assertion to be persuasive.

**1**. Leon-Briviesca contends that because § 1227 requires a showing of at least criminal negligence, CPC § 273a(a) is not covered by § 1227 because a person can be convicted under CPC § 273a(a) based on a showing of general intent, which he asserts is a lesser *mens rea* than criminal negligence.

As the California Supreme Court noted, § 273a(a) "addresses a wide variety of conduct and omissions." *People v. Valdez*, 27 Cal. 4th 778, 789 (2002). The statute reads in relevant part:

> Any person who, under circumstances or conditions likely to produce great bodily harm or death, [1] willfully causes or permits any child to suffer, or [2] inflicts thereon unjustifiable physical pain or mental suffering, or [3] having the care or custody of

---

[16] The four means of committing the offense criminalized in CPC § 273a(a) are not denoted by numbers in the statute. We have added numbers to facilitate our discussion of the statute.

> any child, willfully causes or permits the person or health of that child to be injured, or [4] willfully causes or permits that child to be placed in a situation where his or her person or health is endangered….[17]

CPC § 273a(a). The California Supreme Court discerned "no obstacle to requiring different mental states for distinct types of conduct prohibited by a single penal statute." *Valdez*, 27 Cal. 4th at 789.

Leon-Briviesca, however, asserts that two comments by the California Supreme Court concerning subsection [2] (infliction of "unjustifiable physical pain or mental suffering") indicate that § 273a(a) allows for convictions based on a *mens rea* less than criminal negligence. First, he cites to the California Supreme Court's statements that subsection [2] "unlike the other three [prongs], does not expressly require the conduct to be willful." *Id.* at 789. Second, he cites to the statement in *People v. Sargent*, 19 Cal. 4th 1206, 1224 (1999), that "criminal negligence is not an element of the offense."

Leon-Briviesca misinterprets the California Supreme Court's opinions. In particular, the California Supreme

[17] Although the four branches of conduct set forth in § 273a(a) are phrased in the disjunctive, we have previously held that they are alternative means for accomplishing the same offense, rather than different offenses, and therefore § 273a(a) is not divisible. *See Ramirez v. Lynch*, 810 F.3d 1127, 1138 (9th Cir. 2016). Accordingly, we do not employ a "modified categorical approach," which would require us to identify the branch under which Leon-Briviesca was actually convicted and determine whether that branch was a categorical match to the offenses listed in 8 U.S.C. § 1227(a)(2)(E)(i). *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 187 (2007).

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 36 of 46



Court does not consider the general intent required for a conviction under subsection [2] to be a lesser *mens rea* than criminal negligence. Rather, it explained that in *Sargent*, the "defendant had violently shaken his infant son," and that this "was essentially a battery, . . . a general intent crime." *Id*. at 786. Thus, "the *mens rea* for the crime was the intent to perform the underlying injurious act on a child," and whether "the infliction of such harm was also 'under circumstances or conditions likely to produce great bodily harm or death' was a question for the trier of fact to determine," but this "measure of the defendant's culpability was extrinsic to the intent element of the crime." *Id.* (citation modified).

The California Supreme Court noted that *Sargent* concerned the "direct infliction of physical harm," while *People v. Peabody*, 46 Cal. App. 3d. 43 (1945), and its progeny established the criminal negligence standard for the indirect infliction of harm on a child. *Valdez*, 27 Cal. 4th at 787. It explained that:

> [U]se of a general intent standard is appropriate when the statute criminalizes commission of a battery, or direct infliction of unjustifiable pain or suffering. By contrast, criminal negligence is the appropriate standard when the act is intrinsically lawful, such as leaving an infant with a babysitter, but warrants criminal liability because the surrounding circumstances present a high risk of serious injury. Criminal negligence is not a "lesser state of mind"; it is a standard for determining when an act may be punished under the penal law because it is such a departure from what would be the conduct of

> an ordinarily prudent or careful person under the same circumstances. When that departure endangers the person or health of a child and is "under circumstances or conditions likely to produce great bodily harm or death," it constitutes a felony violation of the child endangerment statute.

*Id*. at 789-90 (quoting CPC § 273a(a)). Thus, under California law a person may be guilty of criminal negligence even though he or she did not have the "general intent" to commit the crime.

Furthermore, the California Supreme Court held that § 273a(a)'s criminal negligence requirement is "rigorous." *Id*. at 788.

> Ordinary negligence will not suffice. Specifically, criminal negligence involves 'a higher degree of negligence than is required to establish negligent default on a mere civil issue. The negligence must be aggravated, culpable, gross, or reckless, that is, the conduct of the accused must be such a departure from what would be the conduct of an ordinarily prudent or careful [person] under the same circumstances as to be incompatible with a proper regard for human life ... or an indifference to consequences."

*Id*. (quoting *People v. Penny*, 44 Cal. 2d, 861, 879 (1955)). The California Supreme Court held that "for 25 years, the lower courts have identified criminal negligence as the relevant standard of culpability for section 273a, subdivision

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 38 of 46



(a) felony child endangerment, and this court has applied that same standard." *Id.*

We conclude that under California law, as defined by the California Supreme Court in *Valdez*, general intent requires a greater showing of *mens rea* than criminal negligence. Accordingly, convictions under CPC 273a(a) for willfully battering a child or for endangering a child due to criminal negligence come within the definition of child endangerment in § 1227.

**2.** Leon-Briviesca asserts that the BIA erred in finding him removable "because a crime of child abuse under [§ 1227], which necessitates a finding of 'substantial risk' of harm, is void-for-vagueness and therefore unconstitutional." Leon-Briviesca claims that § 1227's requirement of a high risk of harm to the child has the same degree of unconstitutional vagueness as was found in *Johnson v. United States*, 576 U.S. 591 (2015) and *Sessions v. Dimaya*, 584 U.S. 148 (2018). He argues that "because it is unclear what a 'high risk' or a 'sufficiently high risk' of harm to child could entail, a judge must necessarily formulate an ordinary case in his or her head before reaching a decision, which invites arbitrary decision-making in violation of a constitutional due process right." In his supplemental letter brief, Leon-Briviesca argues that *Diaz-Rodriguez*, 55 F.4th 697, is a significant development in the law and establishes that § 1227 is ambiguous and supports a determination that the statute is void-for-vagueness.

*Johnson* concerned an enhanced sentence under a provision of 18 U.S.C. § 924(e)(2)(B) which included the provision "or otherwise involves conduct that presents a serious potential risk of physical injury to another." 576 U.S. at 593. The Supreme Court held that a criminal law

violates the Fifth Amendment if it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Id*. The Court determined that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." *Id.* at 597. In *Dimaya*, the Court applied *Johnson* to 18 U.S.C. § 16(b) and found it void-for-vagueness. 584 U.S. at 160-62. The Court explained that under the statute at issue in *Johnson*, a court "focused on neither the 'real-world facts' nor the bare 'statutory elements' of an offense. Instead, a court was supposed to "imagine an idealized ordinary case of the crime—or otherwise put, the court had to identify the kind of conduct the ordinary case of a crime involves." *Id.* at 158 (quoting *Johnson*, 576 U.S. at 597) (cleaned up). The residual clause in *Johnson* "offered no reliable way to discern what the ordinary version of any offense looked like" with the result that "no one could tell how much risk the offense generally posed." *Id*. (cleaned up).

Leon-Briviesca's void-for-vagueness argument is not well-taken. It does not challenge his underlying state conviction, but only the showing required by § 1227. But § 1227 does not concern an imagined situation. Rather, as stated *infra* at 30, for a state conviction to be covered by § 1227, the state prosecution must show that the child was actually placed in a situation "likely to produce bodily or mental harm" in a manner "that constitutes a gross deviation from accepted standards." Thus, § 1227 provides clear standards as to the *mens rea* and the *actus reus* required for coverage.

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 40 of 46



### B. Rivera-Mendoza's conviction under Oregon Revised Statute § 163.545

Rivera-Mendoza contends that the Oregon statute is not a crime of child abuse under § 1227 because the statute "covers not just a risk of harm but the *risk of a risk* of harm" and thus does not require a *mens rea* of criminal negligence.[18]

Rivera-Mendoza reads *State v. Obeidi*, 155 P.3d 80 (Or. Ct. App. 2007) to only require conduct that "*may* be *likely* to endanger" the child. He cites the passage:

> Giving "may be likely to endanger" its common meaning, the phrase refers to the likelihood of *exposure* to harm, rather than the probability of a particular harm actually occurring. Thus, circumstances "may be likely to endanger" when leaving a child unattended is in some degree likely to make probable a state of being exposed to harm.

155 P.3d at 82-83 (footnotes omitted). Rivera-Mendoza argues that the risk required by the Oregon statute is akin to the type of potential or foreseeable harm required by the California and Nevada statutes found inadequate in *Fregozo,* 576 F.3d at 1036-37, and *Alvarez-Cerritino*, 899 F.3d at 777, rather than the reasonable probable harm required by § 1227.

---

[18] Rivera-Mendoza also asserted that § 1227 is limited to parents and guardians. His arguments focused on § 1227 and not on any Oregon state law. As we have determined that § 1227 is not limited to parents and guardians, and ORS § 163.545 states it applies to any "person having custody or control of a child under 10 years of age," we conclude that the Oregon statute does apply to a person who is not the child's parent or guardian.

In other words, Rivera-Mendoza asserts that under Oregon law, "what needed to be 'likely' was not the harm itself, but the *probability* of *exposure* to harm."

Rivera-Mendoza's "risk of a risk" argument is not an accurate reading of Oregon law. In *Obeidi*, the Oregon Court of Appeals expanded on the language cited by Rivera-Mendoza with the following:

> A determination of child neglect under the statute is based on a totality of the circumstances regarding the physical facts and the defendant's mental state. *State v. Goff*, 297 Or. 635, 639, 686 P.2d 1023 (1984). Conviction requires proof beyond a reasonable doubt "(1) that leaving the child unattended was likely to endanger her health or welfare, (2) that the risk of that harm occurring was substantial and unjustifiable, and (3) that the defendant's lack of awareness of that risk was a gross deviation from the normal standard of care." *State v. Paragon*, 195 Or. App. 265, 270–71, 97 P.3d 691 (2004).

155 P.3d at 83. Thus, the totality of the circumstances must show that leaving the child unattended "was likely to endanger her health or welfare," and that the defendant's "lack of awareness" was "a gross deviation from the normal standard of care." This conforms with § 1227's requirement of criminal negligence *mens rea*.[19]

[19] Our decision in *Alvarez-Cerriteno*, 899 F.3d 774, does not support Rivera-Mendoza's argument. There we determined that a Nevada statute

The *Obeidi* court distinguished between foreseeability or possibility and likelihood. It noted that in *Paragon* it had concluded "that the evidence would permit 'an inference of a *possibility* of danger to the seven-year-old's health or welfare, [but] the evidence is not sufficient to permit a finding beyond a reasonable doubt that . . . the circumstances were *likely* to endanger that child's health or welfare and that there was a substantial risk of such harm." *Obeidi*, 155 P.3d at 83 (quoting *Paragon*, 97 P.3d at 691) (emphasis in original). It then applied the standard to Obeidi and held that "a reasonable finder of fact could determine that defendant's leaving her one-year-old unattended in a car was likely to endanger the child's health or welfare and that the risk of harm occurring was substantial and unjustifiable." *Id*. The court explained: "[b]ased on our conclusion that the child was left unattended in circumstances that were likely to endanger her health or welfare, we also reject defendant's argument that a finder of fact could not find that she had the requisite mental state "in the absence of a proven risk." *Id*. at 84.

Similarly, in *Paragon*, the Oregon Court of Appeals stated that "[c]riminal negligence is established if, given the reason for leaving the child in the setting and the circumstances in which the child was left, the risk of physical harm was such that the decision to leave the child was a gross deviation from the standard of care that a reasonable person would observe." 97 P. 3d at 270.

---

that required only a "reasonable foreseeability" of harm to a child was broader than the "reasonable probability or likelihood of harm to a child" required by § 1227. *Id*. at 783. Here, the Oregon courts have adopted a reasonable probability standard.

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 43 of 46



The underlying facts in *Obeidi* might have allowed a court to acquit Obeidi, but her conviction was affirmed because the trial court found that she had the requisite *mens rea* of criminal negligence. To the extent that Rivera-Mendoza has preserved his *mens rea* argument,[20] he has not shown that a conviction under the Oregon statute, which requires a finding of criminal negligence, is less than the minimal level of *mens rea* required by § 1227.

## VI

Leon-Briviesca and Rivera-Mendoza challenge the BIA's denials of their immigration petitions by asserting that their respective state convictions are not crimes "of child abuse, child neglect, or child abandonment" as that term is used in 8 U.S.C. § 1227(a)(2)(E)(1). As directed by the Supreme Court, we determine the best reading of § 1227 using the traditional methods of statutory interpretation. We conclude that the best reading of § 1227 is that: (a) it covers child endangerment; (b) requires a *mens rea* of at least criminal negligence and an *actus reus* of creating a real danger of physical or mental harm to the child; and (c) applies to individuals who are neither the child's parent or guardian. We further conclude that Leon-Briviesca's conviction under California Penal Code § 273a(a) and Rivera-Mendoza's conviction under Oregon Revised Statute § 163.545 come within § 1227. The petitions for review are **DENIED.**

[20] The government notes that Rivera-Mendoza's brief to the BIA stated, "[l]ike the federal generic crime, ORS § 163.545(a) requires a *mens rea* of at least negligence." Thus, it is not clear that he has preserved his argument as to the *mens rea* required under Oregon law.

BUMATAY, Circuit Judge, concurring in the judgment:

I agree with my colleagues that California Penal Code § 273a(a) and Oregon Revised Statutes § 163.545 meet the definition of "a crime of child abuse, child neglect, or child abandonment." *See* 8 U.S.C. § 1227(a)(2)(E)(i). I would take a slightly different approach to get there.

The majority surveys the range of interpretative methods to construct the elements of § 1227(a)(2)(E)(i). These include construing the statutory provision as a "unitary concept" in which we compare the state law at issue against the discrete elements of all three listed crimes *as a whole*. *See* Maj. Op. at 20 (citing *Silva de Santiago v. Bondi*, 161 F.4th 250, 254 (5th Cir. 2025)). While the majority doesn't rely exclusively on that analytical approach, I would have preferred to leave it out.

Our task is to exhaust the "traditional tools of statutory construction" in discerning Congress's meaning. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 401 (2024). And defining three well-established crimes as a "unity" with a single definition seems very *untraditional* to me. In essence, this approach acts like Congress enacted a brand-new crime—a single offense out of three—that we must now fill in with elements. But we don't traditionally frankenstein multiple crimes to create a mega-crime. And I don't think this is what Congress intended. Indeed, this interpretative mode seems plucked from a single line of a Board of Immigration Appeals decision. *See Matter of Soram*, 25 I. & N. Dec. 378, 381 (BIA 2010).

Instead, the better approach is to understand that Congress wanted to place a wide range of crimes against children within § 1227(a)(2)(E)(i)'s scope. Rather than

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 45 of 46



interpreting the three crimes as one, the reason Congress put the three overlapping crimes together "is to give the trio a broad meaning." *Vericool World, LLC v. Igloo Products Corp.*, 175 F.4th 1045, 1063 (9th Cir. 2026) (Bumatay, J., dissenting). So we should treat all three categories of crimes as discrete crimes with their own constitutive elements. *See Bastias v. U.S. Att'y Gen.*, 158 F.4th 1188, 1213–14 (11th Cir. 2025) (Marcus, J., concurring in the judgment). But, because Congress grouped all three related offenses under the umbrella of "a crime of," we should define each of those crimes as broadly as reasonably possible. Under this approach, § 1227(a)(2)(E)(i) directs us to define the generic elements of "child abuse," "child neglect," and "child abandonment" capaciously to capture the broad swath of offenses against children. *Diaz-Rodriguez v. Garland*, 55 F.4th 697, 745 (9th Cir. 2022) (Collins, J., concurring in part and in the judgment), *vacated*, 144 S. Ct. 2705 (2024).

Given the breadth of this inquiry, it is unlikely that there would be considerable daylight between this approach and the others the majority identifies. And that is true here. The majority's identified elements match the general meaning of "child neglect." As I see it, under both the majority's approach and a traditional textual approach, § 1227(a)(2)(E)(i) "(a) [] covers child endangerment; (b) requires a *mens rea* of at least criminal negligence and an *actus reus* of creating a real danger of physical or mental harm to the child; and (c) applies to individuals who are neither the child's parent or guardian." *See* Maj. Op. at 43; *see also Diaz-Rodriguez*, 55 F.4th at 742 (Collins, J., concurring).[1] As a result, the generic federal definition of

---

[1] Judge Collins's concurrence in *Diaz-Rodriguez* observed that an offender "should have been aware that his or her conduct presented a

Case: 21-70107, 06/25/2026, ID: 12954781, DktEntry: 81-1, Page 46 of 46



§ 1227(a)(2)(E)(i) encompasses the minimum elements of California Penal Code § 273a(a) and Oregon Revised Statutes § 163.545.

I thus concur in denying Martin Leon-Briviesca's and Sotero Rivera-Mendoza's petitions for review.

---

substantial and unjustifiable risk of *serious* physical or emotional harm to the child." 55 F.4th at 746 (emphasis added). But a fresh look at the definitions of "child neglect" shows that "harm" doesn't need to be "serious." *See, e.g.*, 25 U.S.C. § 3202(4) (1996); 42 U.S.C. § 5106g(4) (1995); Or. Rev. Stat. § 163.545 (1996); S.C. Code Ann. § 20-7-50 (1996). Rather, a substantial and unjustifiable risk of physical or mental harm is enough. *See* Maj. Op. at 32.